IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

TREENA NICOLE CLEABORN,

      Plaintiff,

  vs.

                              No. 18-2603-JPM-dkv

SHELBY COUNTY BOARD OF EDUCATION,
ANNIECE GENTRY, CHANTAY BRANCH,
CECILIA BARNES, GREGORY GLENN,
ANTHONY KRONE, and LATERICA ROSE,

      Defendants.

---

REPORT AND RECOMMENDATION ON THE DEFENDANTS' PARTIAL MOTION TO
DISMISS PLAINTIFF'S COMPLAINT

---

On August 8, 2018, the plaintiff, Treena Nicole Cleaborn filed suit in the Circuit Court of Tennessee for the Thirtieth Judicial District in Memphis against the Shelby County Board of Education ("the Board") and Principal Anniece Gentry ("Principal Gentry") claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17. (Compl. ECF No. 1-2.) Specifically, Cleaborn complained of discrimination on the basis of color, claiming that the Board and Principal Gentry subjected her to retaliation, harassment, intimidation, humiliation, and belittlement. (*Id.* at 3.) The Board and Principal Gentry removed this case to the District Court for the Western District of Tennessee on August 31, 2018. (ECF No. 1.)

Subsequently, Cleaborn amended her complaint to include

additional defendants and claims.  (Am. Compl., ECF No. 12.)  The
amended complaint consists of 24 type-written pages with 102
pages of exhibits attached. (*Id.*)  The amended complaint added
five employees of the Board as defendants: Chantay Branch, Labor
and Employee Director; Cecilia Barnes, Labor and Employee
Manager; Gregory Glenn, Labor and Employee Advisor; Anthony
Krone, Risk Management Manager; and LaTerica Rose, Risk
Management.  It also added five additional claims under federal
law: (1) conspiracy against rights, 18 U.S.C. § 241; (2)
deprivation of rights under color of law, 18 U.S.C. § 242; (3)
indirect violations of the Racketeer Influenced and Corrupt
Organizations Act ("RICO") by way of retaliation, 18 U.S.C. §
1513(e); (4) violations of the Civil Rights Act, 42 U.S.C. §
1983; and (5) conspiracy to violate Cleaborn's rights, 42 U.S.C.
§ 1985(3); as well as three Tennessee state law claims: (1)
violations of the Tennessee Human Rights Act ("THRA"), T.C.A. §
4-21-101, *et seq.*; (2) violations of the Tennessee Healthy
Workplace Act, T.C.A. § 50-1-501, *et seq.*; and (3) gross
negligence, asserted only against the Board.  (*Id.* at 7.)

Before the court is the October 10, 2018 motion of all the
defendants[1] to dismiss the following claims in Cleaborn's amended

---

[1]
    On October 10, 2018, the attorneys for the Board entered a
special appearance on behalf of all the newly named and unserved
defendants.

complaint: (1) the Tennessee Healthy Workplace Act, T.C.A. § 50-1-501, *et seq.*, (Mot. to Dismiss 6-8, ECF No. 14); (2) 18 U.S.C. § 241, (*id.*); (3) 18 U.S.C. § 242, (*id.*); (4) the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1513(e), (*id.* at 8-11); (5) 42 U.S.C. § 1983, (*id.* at 13-14); (6) 42 U.S.C. § 1985(3), (*id.* at 11-12); and (7) Cleaborn's state-law tort claims, (*id.* at 14-16).[2]   Cleaborn filed a response in opposition to the defendants' motion to dismiss for failure to state a claim, (ECF No. 15), the defendants filed a reply (ECF No. 37), and Cleaborn filed a response to the defendants' reply, (ECF No. 41).[3]

On October 30, 2018, this case was referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (ECF No. 18.)  For the reasons that follow, it is recommended that the defendants' partial motion to dismiss be granted.

---

[2]

The defendants do not seek dismissal of Cleaborn's Title VII color discrimination and retaliation claims at this time.

[3]

Because Cleaborn failed to obtain permission of the court to file a reply to the defendants' response, the court will not consider her reply to the response in ruling on the defendants' partial motion to dismiss. Regardless, Cleaborn's reply to the defendants' response merely repeated the arguments she had already raised in her response.

I.    PROPOSED FINDINGS OF FACT

Cleaborn was employed by the Board during the 2017-2018 school year as a fifth-grade teacher at Dunbar Elementary School. (Am. Compl. 9, 16, 17, 21; ECF No. 12.) Cleaborn claims that Anniece Gentry, Principal of Dunbar Elementary; Chantay Branch, Labor and Employee Director; Cecilia Barnes, Labor and Employee Manager; Gregory Glenn, Labor and Employee Advisor; Anthony Krone, Risk Management Manager; and LaTerica Rose, Risk Management, harassed, intimidated, humiliated, belittled, and retaliated against her because of the color of her skin. (*See* Am. Compl. 1-4, ECF No. 12.) The majority of Cleaborn's 24-page amended complaint details a perceived pattern of harassment and retaliation against Cleaborn, allegedly spearheaded by Principal Gentry, that Cleaborn claims created a hostile and intimidating work environment. (*See* Am. Compl., ECF No. 12.)

Cleaborn asserts that the harassment and intimidation began on September 1, 2017, when Principal Gentry removed items displayed outside of Cleaborn's classroom and put them on her desk with a note stating that the items did not meet expectations. (*Id.* at 8; Exh. C, ECF No. 12-1.) On September 26, 2017, Principal Gentry allegedly emailed Cleaborn to notify her that her students' test scores were too low and, thus, that Cleaborn was not meeting expectations. (*Id.* at 9; Exh. D, ECF No. 12-1.) Cleaborn asserts that she was "distraught, irritated,

4

tired of the harassment, and nit-picking, which had become a hostile work environment" by this point and emailed Principal Gentry requesting she "excess" Cleaborn from her position so that Principal Gentry could replace Cleaborn with someone who could meet Principal Gentry's high expectations. (Am. Compl. 9, ECF No. 12.)

At some point in October 2017, Cleaborn suffered some type of injury, (Exh. F.1, ECF No. 12-1), and informed Principal Gentry that the doctor said she needed to "stay off [her] foot and keep it elevated." (Exh. F.2, ECF No. 12.) Upon receiving Cleaborn's email and doctor note, Principal Gentry requested additional information regarding Cleaborn's medical restrictions. (Exh. F.2, ECF No. 12-1.) Cleaborn alleges that Principal Cleaborn knowingly requested this information while Cleaborn was off work on an approved vacation day in order to "make it appear that Ms. Cleaborn was not complying with [Principal Gentry's] request." (Am. Compl. 9, ECF No. 12.)

Thereafter, on November 6, 2017, Principal Gentry allegedly "came in [Cleaborn's] classroom and started yelling at her," (id. at 10), and then required Cleaborn to "walk down three flights of stairs on her hurt foot" against her medical restrictions, (id.; Exh. H, ECF No. 12-1). Cleaborn claims this was an act of retaliation because she previously reached out to Labor and Employee Relations about her grievances with Principal Gentry.

(Am. Compl. 10, ECF No. 12.)   Three days later, Cleaborn met with Principal Gentry, Barnes, and a union representative to discuss the November 6, 2017 incident.   (*Id.*)   During this meeting, Cleaborn requested to be removed from under Principal Gentry "because of how she had been treated and harassed," to which Barnes allegedly responded by telling Cleaborn she had not "proved herself as a teacher and started to verbally attack[] Cleaborn."   (*Id.* at 10-11.)   Ultimately, this meeting led to Cleaborn's "demotion" from teaching fifth grade to teaching first grade.   (*Id.* at 11.)   Cleaborn claims, however, that she "was shown to have moved the 5th grade students more than any teacher had ever moved students."   (*Id.*)

On November 21, 2017, Cleaborn received an email from Labor and Employee Relations that included a document outlining Principal Gentry's job expectations for Cleaborn.   (Exh. N, ECF No. 12-1.)   Cleaborn alleges Labor and Employee Relations demanded she sign the attached job-expectations form and "agree to allow Principal Gentry to monitor her every move."   (Am. Compl. 11, ECF No. 12.)   Cleaborn asserts that Principal Gentry failed to require Ms. Eiland, a teacher also new to teaching first grade, to sign such a document because her skin tone was "darker" than Cleaborn's skin tone.   (*Id.* at 12.)   As the defendants note in their motion to dismiss, (Mot. to Dismiss 3, ECF No. 14), neither the email Cleaborn references nor the

attached document dictated that Cleaborn was required to sign anything, (Exh. N, ECF No. 12-1).

On December 5, 2017, Principal Gentry emailed Cleaborn informing her that she failed to meet the deadline to set up hallway bulletin boards. (Am. Compl. 12, ECF No. 12.; Exh. O, ECF No. 12-1.) Cleaborn alleges that Ms. Eiland was not required to set up a hallway board. (Am. Compl. 12, ECF No. 12.)

On the evening of December 7, 2017, Cleaborn emailed Principal Gentry to inform her that she would be "a few hours late" the next day. (Exh. P, ECF No. 12-1.) In response, Principal Gentry asked Cleaborn to meet with her when she arrived to school. (*Id.*) Cleaborn alleges that during this meeting Principal Gentry told Cleaborn to leave her office because Cleaborn wanted to record their discussion, (Am. Compl. 13, ECF No. 12), and that a few hours later "Principal Gentry came into []Cleaborn's room yelling at her in front of her students, stomping her foot, and pointing the tip of the walkie-talkie in her face stating she was late for dismissal," (*Id.*).

On December 11, 2017, Cleaborn informed Principal Gentry that she would be missing work because "her stomach was upset from the stress and harassment" and because "Labor and Employee Relations . . . [has done] nothing" regarding her complaints, "making the work environment more hostile and toxic." (*Id.*) Three days later, Cleaborn received an email notifying her that

she was required to attend a disciplinary hearing with the Department of Labor and Employee Relations on December 18, 2017 to address an allegation of insubordination. (*Id.; see also* Exh. T, ECF No. 12-1.) Cleaborn, Gregory Glenn, a labor relations advisor with the Department of Labor and Employee Relations, and a union representative attended the meeting. (Am. Compl. 13, ECF No. 12.)

On January 3, 2018, Cleaborn claims that Principal Gentry refused to recognize and praise her work during a faculty meeting. (*Id.* at 14.) The next day, at another faculty meeting, Cleaborn alleges that she informed another teacher that she was being shunned by the teachers on her grade level. (*Id.*) Cleaborn surmises that this was the result of retaliatory actions taken by Principal Gentry.

On January 5, 2018, the Department of Labor and Employee Relations notified Cleaborn that she was required to attend another disciplinary hearing on January 11, 2018 to address an allegation of insubordination. (Am. Compl. 15, ECF No 12; *see also* Exh. W, ECF No. 12-1.) During the hearing, Cleaborn requested someone other than Principal Gentry perform her teacher observation, but Principal Gentry conducted the observation herself. (Am. Compl. 15-16, ECF No. 12; Exhs. Z.1 & Z.2, ECF No. 12-1.)

Subsequently, on February 16, 2018, Cleaborn informed Glenn

and Branch at the Department of Labor and Employee Relations that
Principal Gentry humiliated and embarrassed her in front of other
employees and that Principal Gentry did not humiliate Ms. Eiland.
(Am. Compl. 16, ECF No. 12; Exh. CC, ECF No. 12-1.)  Cleaborn
claims that on February 22, 2018, she emailed Principal Gentry,
Glenn, Branch, Barnes, and her union representatives to inform
them that she would not be attending work on February 23, 2018
because she "was physically ill form [sic] the hostile and toxic
work environment" and requested that a documented plan be put in
place to end such harassment.  (*Id.;* Exh. DD, ECF No. 12-1.)
Cleaborn attached to her amended complaint a letter dated
February 22, 2018 from the Department of Labor and Employee
Relations explaining that, due to her insubordination and
improper conduct, Cleaborn was suspended from work without pay on
February 23, 2018.  (Exh. EE, ECF No. 12-1.)  Cleaborn asserts
that this suspension was given to her in retaliation for her
complaints about Principal Gentry.  (Am. Compl. 16, ECF No. 12.)

    After this suspension, Cleaborn was transferred from her
position at Dunbar Elementary to a new teaching position at
Holmes Road Elementary, (*id.* at 17), and was told not to contact
Principal Gentry anymore, (Exh. II, ECF No. 12-1).  Cleaborn
asserts that after this move, Branch continually retaliated
against her.  Specifically, Cleaborn claims that Branch's
retaliatory behavior included forcing Cleaborn to submit to

classroom observations at Holmes Road Elementary, sending Human Resources to inform Cleaborn that she was not guaranteed employment during the 2018-2019 school year because her grant funding was no longer available, and encouraging Human Resources to refuse to correct her salary, which Cleaborn alleges was $1,000 lower than her quoted offer. (Am. Compl. 18, ECF No. 12; *see also* Exh. JJ, ECF No. 12-1.)

At some point during her employment, Cleaborn suffered an unspecified on-the-job arm injury. (Am. Compl. 18, ECF No. 12.) Cleaborn claims that Krone and Rose, employees of the Risk Management Department, intentionally caused delay to Cleaborn's ability to receive medical treatment for this injury. (*Id.*) Specifically, Cleaborn claims that Rose repeatedly refused to approve her doctor's visit for three months, scheduled said appointment on the first day of school which "didn't make her look good professionally," and waited three weeks to fill a $3,000 prescription to "intentionally [keep] her in physical pain." (*Id.*) Cleaborn claims that this was intentional collusion by Krone and Rose to harm Cleaborn's reputation and cause her physical pain in retaliation for her complaints about Principal Gentry. (*Id.*)

Finally, Cleaborn claims that during the summer of 2018, Principal Gentry deviated from standard procedure and cancelled Cleaborn's account access to her students' scores. (*Id.* at 19.)

Cleaborn also asserts that the Board attempted to deny Cleaborn's unemployment benefits, a decision which was reversed at the Appeals Tribunal level. (*Id.*)

Cleaborn claims that all the individually-named defendants' actions described above operated to "deprive her of her rights" and made each individual defendant an unfit agent, such that the Board should be liable for their actions.

II.  PROPOSED CONCLUSIONS OF LAW

A.  <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Cleaborn's complaint states a claim for which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to the plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"Pro se complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should

12

therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir.2004)).  Pro se litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).  Further, the courts are not required to act as counsel for a pro se litigant; nor are they required to sort through the pleadings to create a claim on behalf of the plaintiff.  *Pliler v. Ford*, 542 U.S. 225, 231 (2004)("[D]istrict judges have no obligation to act as counsel or paralegal to pro se litigants.");  *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted).  Requiring the court "to ferret out the strongest cause of action on behalf of pro se litigants . . . would transform the courts from neutral arbiters of disputes into advocates for a particular party." *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). "While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue." *Id.*

B. Claims Based on Federal Criminal Statutes, *18 U.S.C. §§ 241 and 242*

    Cleaborn asserts that the harassment, intimidation,

humiliation, belittlement, and retaliation she suffered at the hands of the defendants violates 18 U.S.C. §§ 241 and 242. (Am. Compl. 7-8, 12, ECF No. 12.) In their motion to dismiss, the defendants argue §§ 241 and 242 are criminal statutes that do not contain a private cause of action; thus, Cleaborn fails to state a claim upon which relief can be granted. (Mot. to Dismiss 6-9, ECF No. 14.) In response, Cleaborn claims that she "referenced the criminal statutes because she wanted to make it clear how bad things were for her." (Resp. to Mot. to Dismiss 3, ECF No. 22.) Cleaborn seemingly also argues that the "criminal offenses . . . . do provide for civil causes of action." (*Id.* at 2.)

Sections 241 and 242 of Title 18 provide for penalties of fines, imprisonment, or both, when two or more persons: (1) "conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any rights or privileges secured to him" or (2) act under color of law to "willfully subject[] any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 18 U.S.C. §§ 241 & 242.

"The fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1974). It is well settled that §§ 241 and 242

14

are criminal statutes with no private right of action.  *See Booth v. Henson*, 290 F. App'x 919, 920-21 (6th Cir. 2008)(holding that the plaintiff lacks standing to file an action under §§ 241 and 242); *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)(holding that the district court properly dismissed the defendant's claim filed pursuant to §§ 241 and 242 because he had no private right of action under those statutes); *Brewster v. Wells Fargo Bank*, 2012 WL 4024749, at *4 n.8 (W.D. Tenn. Sept. 12, 2012)(noting that the plaintiff cannot sue under §§ 241 and 242 because they are criminal statutes that cannot be the basis for private civil action); *Riser v. WSYX-TV ABC-6*, 2002 WL 31409427, at *8 (S.D. Ohio July 17, 2002)(citing *Krajicek v. Justin*, 1999 WL 195734, at *1 (6th Cir. Mar. 23, 1999))(concluding that §§ 241 and 242 do not provide any basis for civil liability); *Roper v. Lappin*, 2010 WL 5092950, at *1 n.3 (N.D. Ohio Dec. 7, 2010)("Because this criminal statute[] does not provide any basis for civil liability, Petitioner cannot state a claim upon which relief may be granted under this statute.").

A "private right of action" is a term of art describing when a law creates rights allowing private parties – such as Cleaborn – to bring a lawsuit.  Here, §§ 241 and 242 do not provide for such private right of action; thus, Cleaborn may not bring suit to impose civil liability under these statutes.

Because 18 U.S.C. §§ 241 and 242 are criminal statutes that do not provide any basis for civil liability, Cleaborn fails to state a claim upon which relief may be granted.  Therefore, it is recommended that Cleaborn's §§ 241 and 242 claims against the defendants be dismissed.

C.    <u>Federal Civil Claims Added in the Amended Complaint</u>

    1. *The Racketeer Influenced and Corrupt Organizations Act,*
*18 U.S.C. § 1513(e)("RICO")*

In her amended complaint, Cleaborn alleges that the
defendants colluded and conspired, in violation of Section
1513(e) of RICO, to deprive her of her rights, harass,
intimidate, humiliate, belittle, and retaliate against her by
several employees and departments under the Board. (Am. Compl.
7, 9, ECF No. 12.) The defendants moved to dismiss this claim
pursuant to Rule 12(b)(6) because (1) Cleaborn failed to plead
the requisite predicate acts to support a RICO claim, (2) the
Board cannot be liable under RICO because it is a municipal
entity, and (3) the Board cannot, by itself, engage in an
activity prohibited by RICO. (Mot. to Dismiss 8-11, ECF No. 14.)
In her response, Cleaborn merely restated the claims she made in
her amended complaint, arguing that the court must take her
pleadings as establishing the elements of RICO, (Resp. to Mot. to
Dismiss 10, ECF No. 22), and claiming that each individual
defendant's acts formed the conspiracy sufficient to prove a
violation of RICO. (*Id.* at 10-14.) She asserts that "[e]very
single employee in the complaint filed pertaining to [the Board]
played a valid and unquestionable role in violating [Cleaborn's]
rights" and "[a]ll of the actions of the above employees of [the
Board caused [Cleaborn] mental and physical anguish, pain and

suffering, [and] were acts of retaliation . . . ."    (Resp. to
Mot. to Dismiss 13, ECF No. 22.)

Cleaborn's RICO claim against the Board fails as a matter of
law.  The Sixth Circuit has consistently held that a municipal
entity – like a school board – cannot form the criminal intent
necessary to commit the required predicate acts under RICO and
thus cannot be held liable for a RICO claim.  *See Call v. Watts,*
1998 WL 165131, at * 2 (6th Cir. Apr. 2, 1998); *see also United
States v. Thompson,* 669 F.2d 1143, 1148 (6th Cir. 1982); *Kimbro
v. Toms*, 2011 WL 4361499, at *5 (M.D. Tenn. Sept. 19, 2011);
*McGee v. City of Warrensville Heights,* 16 F.Supp.2d 837, 848
(N.D. Ohio 1998); *County of Oakland by Kuhn v. City of Detroit,*
784 F.Supp. 1275, 1283 (E.D. Mich. 1992).  Because the Board is a
municipal entity and cannot form the requisite intent to commit
the predicate acts required under RICO, Cleaborn cannot maintain
a successful RICO claim against it.

Further, the plaintiff in a RICO claim must "allege[] . . .
a criminal enterprise separate and distinct from the alleged
pattern of racketeering activity" which is a "distinct and
necessary element of a RICO claim."  *American Nursing Care, Inc.
v. Leisure*, 609 F. Supp. 419, 430 (N.D. Ohio); *see also Begala v.
PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000)("Under RICO, a
corporation cannot be both the 'enterprise' and the 'person'
conducting or participating in the affairs of that enterprise.").

"An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Begala*, 214 F.3d at 781 (citing to *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982)). Here, the individually-named defendants are employees of the Board. They committed the alleged conspiratorial acts as agents of the Board. Therefore, Cleaborn has failed to allege the existence of a criminal enterprise separate and distinct from the people committing the alleged pattern of racketeering activity.

Moreover, Cleaborn fails to sufficiently allege a pattern of racketeering activity. Section 1964(c) of RICO authorizes civil suits and provides in pertinent part that: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." Section 1962(c) makes it unlawful "for any person . . . associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c); *see also In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 484 (6th Cir. 2013). To establish a violation of § 1962, a plaintiff must show: (1) there were two or more predicate offenses, (2) the existence of an enterprise, (3) a nexus between the pattern of racketeering activity and the

19

enterprise, and (4) an injury to business or property as a result of the above three factors. *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993)(citing *Beneficial Std. Life Ins. Co. v. Madriaga*, 851 F.2d 271, 274 n.5 (9th Cir. 1988).

To establish a *pattern* of racketeering activity, the plaintiff must allege at least two related acts of racketeering activity that amount to or pose a threat of continued criminal activity. *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008). Crimes comprising "racketeering activity" are listed under 18 U.S.C. § 1961(1) and are commonly referred to as "predicate acts."

"The original purpose of the RICO statute was to combat organized, continuing criminal activity." *Hossain v. Ocwen Loan Servicing, LLC*, No. 3:14-cv-0002, 2015 WL 5243877, at *4 (M.D. Tenn. Sept. 8, 2015)(citing *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). A RICO plaintiff must show that the predicate acts are related and that they constitute or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). "It is this notion of 'continuity plus relationship' that combines to produce a 'pattern' under RICO." *Hossain*, 2015 WL 5243877, at *5 (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006)). Where the plaintiff alleges that the defendants had the single objective to retaliate against her, "the purported

racketeering activity does not bear the markings of the long-term criminal conduct about which Congress was concerned when it enacted RICO." *Id.* (citing *Moon*, 465 F.3d at 725-26).

In this case, the alleged predicate acts – the harassment, intimidation, humiliation, belittlement, and retaliation by employees of the Board – even if presumed true, were all directed at one victim, Cleaborn, with the alleged single objective of retaliating against her due to Cleaborn's issues with Principal Gentry. Cleaborn alleges no other purpose for the defendants' behavior or another injury caused by their actions, and there are no facts suggesting a threat of continued criminal activity beyond the goal of retaliating against Cleaborn existed. In such circumstances, the purported racketeering activity does not bear the markings of long-term criminal conduct and the allegations are not sufficient to evidence a pattern of racketeering activity. *See Moon*, 465 F.3d at 725 (holding that the alleged predicate acts were all "keyed to Defendants' single objective of depriving Moon of his benefits," and, thus, were insufficient to establish a RICO claim); *Southampton Assocs., L.P. v. K. Jess, Inc.*, 1995 WL 25431, at *3 (6th Cir. Jan 23, 1995)(holding that the plaintiff did not adequately plead a RICO claim because he did not show that the defendants' predicate acts posed a threat of continued criminal activity to other victims); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994)("We cannot conclude

that Flakt's alleged actions here, involving a single victim and a single scheme for a single purpose over seventeen months, constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO.").

Cleaborn has also failed to identify that any of the defendants committed a predicate offense under 18 U.S.C. § 1961. As to enterprise, there are no factual allegations plausibly suggesting that the defendants formed any type of association which functioned as a "continuing unit," or that the behavior of the defendants is "ongoing" and "coordinated." *Frank*, 4 F.3d at 1386. There are no allegations plausibly showing some sort of "chain of command" or other evidence of hierarchy, even a highly limited one. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 700 (6th Cir. 2000), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). The complaint in this case contains nothing but conspiracy-style accusations which are insufficient to allege a "certain amount of organizational structure," that functions with a "common purpose." *See Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 794 (6th Cir. 2012)(citations omitted).

Consequently, the complaint fails to state a claim under RICO. Accordingly, it is recommended that Cleaborn's RICO claims be dismissed for failure to state a claim upon which relief may be granted.

2. *Civil Action for Deprivation of Rights, 42 U.S.C. § 1983*

To bring an action under § 1983, Cleaborn must allege that she was deprived of a right secured by the Constitution or laws of the United States and that such deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983; *Fritz v. Charter Twp. of Cornstock*, 592 F.3d 718, 722 (6th Cir. 2010). Here, Cleaborn asserts that the harassment, retaliation, intimidation, humiliation, and belittlement by the defendants violates § 1983. (Am. Compl. 8, ECF No. 12.)

As an initial matter, Cleaborn does not specify in her amended complaint whether she is suing Principal Gentry, Ms. Branch, Ms. Barnes, Mr. Glenn, Mr. Krone, or Ms. Rose in their individual or official capacities, and it is not clear from the allegations in the complaint. In their motion to dismiss, the defendants argue that the individual defendants are being sued in their official capacity, making this a suit against the Board for all purposes. (Mot. to Dismiss 11, ECF No. 14.) In response, Cleaborn argues that, § 1983 "imposes liability on state and local officials, who are acting under color of law, in their individual capacity." (Resp. to Mot. to Dismiss 17, ECF No. 22.)

Because Cleaborn failed to indicate in her amended complaint whether she is suing the defendants in their individual or official capacities, the court assumes that each of the above-

named defendants are being sued in their official capacities as
employees of Shelby County Schools. *See Smith v. Riles*, No. 16-
cv-2687-JDT-dkv, 2016 WL 11249104, at *3 (W.D. Tenn. Dec. 8,
2016), *report and recommendation adopted*, No. 16-cv-2687-JDT-dkv,
2017 WL 25479 (W.D. Tenn. Jan. 3, 2017); *Hawks v. Jones*, 105 F.
Supp. 2d 718, 722 (E.D. Mich. 2010)("It is well-settled in this
Circuit that, absent a clear indication that § 1983 defendants
are being sued in their individual capacities, courts must assume
that they are being sued in their official capacities
only.)(citations omitted).   Claims against county officials in
their official capacity are tantamount to a suit against the
county entity.   *Kentucky v. Graham*, 473 U.S. 159, 166
(1985)(citation omitted).   Therefore, Cleaborn's claims against
the named defendants are properly construed as a claim against
the Board only.   Accordingly, the court recommends that
Cleaborn's § 1983 claims against Principal Gentry, Ms. Branch,
Ms. Barnes, Mr. Glenn, Mr. Krone, and Ms. Rose in their official
capacities be dismissed.

    A governmental entity is liable under § 1983 when "the
entity's 'policy or custom' [] played a part in the violation of
federal law. *Graham*, 473 U.S. at 199 (quoting *Monell v. Dep't of
Soc. Servs. of New York*, 436 U.S. 658, 694 (1978)).   The
defendants argue that, as against the Board, Cleaborn has failed
to state a claim because she cannot prove that the school

district itself is the wrongdoer. (*Id.* at 12.) A school board cannot be liable on a theory of *respondeat superior*; the plaintiff must show that the school district itself is the wrongdoer. *Hart v. Paint Valley Local Sch. Dist.*, 2002 WL 31951264, at *9 (S.D. Ohio Nov. 15, 2002)(citing to *Doe v. Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 506 (6th Cir. 1996)).

Instead, a school board will be liable under § 1983 if an "officially executed policy, or the toleration of a custom within the school district leads to, causes, or results in the deprivation of a constitutionally protected right." *Id.* (citing to *Monell*, 436 U.S. at 690-91 (1978)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994)(quoting *Polk Co. v. Dodson*, 454 U.S. 312, 326 (1981)(citation omitted)).

In the instant case, Cleaborn has failed to allege that the Board acted pursuant to a policy, procedure, or custom in causing her alleged constitutional harm, and nothing in the complaint demonstrates that the actions of its employees occurred as a result of a policy or custom implemented or endorsed by Shelby County Schools. Cleaborn's theory of liability is not premised on such required policy or custom, but on *respondeat superior* which is an impermissible avenue of imposing liability upon the

Board.

Not only has Cleaborn failed to point to a policy, procedure, or custom of the Board, Cleaborn has also failed to plead any violation of her *constitutional rights* in fact occurred. Cleaborn's amended complaint alleges no violation of her constitutional rights. (*See* Am. Compl., ECF No. 12.) In her response to the defendants' motion to dismiss, Cleaborn argues that she suffered harm because her "personal lifestyle was affected" by the actions of the defendants, her on-the-job injury was not addressed in a timely manner, and due to the harassment and intimidation she was suffering. (*Id.* at 17-19.) Cleaborn has failed to claim any injury or harm regarding her constitutional rights, as required under *Monell*. 436 U.S. 658, 690-91 ("holding that municipal liability must be predicated upon the existence of some policy, procedure, or custom resulting in *constitutional* harm to the plaintiff")(emphasis added). Consequently, the complaint fails to establish a basis of liability against the Board and fails to state a claim under § 1983 upon which relief may be granted.

Thus, it is recommended that Cleaborn's § 1983 claims be dismissed against all defendants for failure to state a claim upon which relief may be granted.

3. *Conspiracy to Interfere with Civil Rights, 42 U.S.C. §
1985(3)*

Cleaborn asserts that the defendants colluded and conspired
to deprive her of her rights by harassing, intimidating,
humiliating, belittling, and retaliating against her. (Am.
Compl. 8, ECF No. 12.) The defendants moved to dismiss this
claim, arguing that Cleaborn cannot state a claim under § 1985(3)
because the individually-named defendants were acting as agents
of the Board and, by law, the Board cannot be held to have
conspired with itself. (Mot. to Dismiss 14, ECF No. 14.) From
what the court can glean from Cleaborn's response, she believes
that the defendants incorrectly identified the individually-named
defendants and departments under the Board as one entity. (Resp.
to Mot. to Dismiss 8-9, ECF No. 22.)

To state a cause of action under § 1985(3), a complaint must
allege:

> that the defendants did (1) conspire or go in disguise
> on the highway or on the premise of another (2) for the
> purpose of depriving, either directly or indirectly,
> any person or class of persons of the equal protection
> of the laws, or of equal privileges and immunities
> under the laws. . . . (3) [one or more of the
> conspirators] did, or caused to be done, any act in
> furtherance of the object of the conspiracy whereby
> another was (4a) injured in his person or property or
> (4b) deprived of having and exercising any right or
> privilege of a citizen of the United States.

*Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)(internal
quotation marks omitted). The plaintiff in a § 1985(3) suit must

prove the existence of a conspiracy among "two or more persons."
*Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*,
926 F.2d 505, 509 (6th Cir. 1991). It is well-settled in the
Sixth Circuit that a corporation cannot conspire with its own
agents or employees. *See Amadasu v. The Christ Hosp.*, 514 F.3d
504, 507 (6th Cir. 2008)(holding that the plaintiff's § 1985
claim was barred by the intra-corporate conspiracy doctrine where
the all of the individual defendants were acting as a collective
entity"); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339
(6th Cir. 1984)("[T]here is no conspiracy if the conspiratorial
conduct challenged is essentially a single act by a single
corporation acting exclusively through its own directors,
officers, and employees, each acting within the scope of his
employment."); *Irons v. City of Bolivar*, 897 F. Supp. 2d 665, 669
(W.D. Tenn. 2012)(citing to *Cox v. Crowe*, 2009 WL 1562606, at *2
(E.D. Ky. June 3, 2009)).

The "intra-corporate conspiracy" doctrine makes clear that a
"corporation cannot conspire with itself any more than a private
individual can, and it is the general rule that the acts of the
agent are the acts of the corporation." *Hull*, 926 F.2d at 509
("[I]f all of the defendants are members of the same collective
entity, there are not two separate 'people' to form a
conspiracy."). Furthermore, the Sixth Circuit has already
determined that different employees and agents of the school

district cannot form a conspiracy because they are all members of the same collective entity. *Id.* at 510.

"[C]orporate actors might be beyond the scope of their employment where the aim of the conspiracy exceeds the reach of legitimate corporate activity." *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994). In *Johnson v. Hills & Dales General Hospital*, the Sixth Circuit distinguished between "internal corporate decisions" and "situations in which corporate actors try to interfere with a plaintiff's access to public benefits or those of other entities." *Id.* at 840-41. The court held that the plaintiff failed to establish that the individual defendants acted outside the course of their employment where the alleged conspiratorial acts were "connected to the legitimate business" of the hospital, forwarded to the proper managerial authorities, and directed to conditions that affected patient care and the morale of hospital staff. *Id.* at 841.

Here, Cleaborn has failed to plead the facts necessary to show that the named defendants and the Board acted as separate entities sufficient to form a conspiracy under § 1985(3). Principal Gentry, Branch, Barnes, Glenn, Krone, and Rose are all agents of the Board. Further, based on Cleaborn's pleadings, the defendants were acting within the reach of legitimate corporate activity. The acts of the individual defendants are connected to the legitimate business of the school. Each incident described

by Cleaborn as part of this alleged conspiracy can be tied to some legitimate purpose of the school, whether educational goals for students, employee conduct in the workplace, or policies in place for workplace complaints and injury reports.[4] Cleaborn has failed to plead facts sufficient to show that the defendants were acting pursuant to an illegitimate purpose of the school such that their acts fall outside of the scope of employment and render them separate entities for the purpose of such conspiracy. Therefore, the individual defendants and the Board constitute one entity for the purposes of any purported "conspiracy" and the intra-corporate conspiracy doctrine operates to bar Cleaborn's claims under § 1985(3).

Consequently, the complaint fails to state a claim under § 1985 upon which relief may be granted. For these reasons, it is recommended that Cleaborn's § 1985 claims be dismissed for failure to state a claim upon which relief may be granted.

---

[4]    For example, Principal Gentry's critiques about class work not meeting expectations, (Am. Compl. 8, ECF No. 12), is directly tied to the legitimate business of training students and assuring they are meeting educational goals.  Further, Glenn's disciplinary meeting with Cleaborn, (*id.* at 13), is directly tied to the legitimate purpose of meeting to discuss employee conduct in the workplace.

A. State Civil Claims

    1. *Tennessee Healthy Workplace Act, T.C.A. § 50-1-501, et seq.*

Cleaborn asserts that the Board "failed to comply with the law passed in 2014 and implement a policy in accordance with the Tennessee Healthy Workplace Act, which shows cause and makes them liable for the unhealthy workplace environment." (Am. Compl. 7, ECF No. 12.) She claims that she suffered abusive conduct, threats, intimidation, humiliation, work sabotage, and verbal abuse – all of which are in violation of the Tennessee Healthy Workplace Act's mandates. (*Id.* at 8.) The defendants moved to dismiss on the ground that the Tennessee Healthy Workplace Act does not provide a private cause of action, rendering Cleaborn's suit improper. (Mot. to Dismiss 8-9, ECF No. 14.) In response, Cleaborn claims that the Board is liable "because [the Act] clearly states there is full liability if a policy is not in place by March 1, 2015 [and the Board] did not have a policy in place." (Resp. to Mot. to Dismiss 6, ECF No. 22). Essentially, Cleaborn claims that the Board is strictly liable for the injuries caused to her by failing to implement the Tennessee Healthy Workplace Act.

Tenn. Code Ann. § 50-1-503 provides the following:

(a) No later than March 1, 2015, the Tennessee advisory commission on intergovernmental relations (TACIR) shall create a model policy for employers

> to prevent abusive conduct in the workplace. The
> model policy shall be developed in consultation
> with the department of human resources and
> interested municipal and county organizations
> including, but not limited to, the Tennessee
> municipal league, the Tennessee county services
> association, the municipal technical advisory
> service (MTAS), and the county technical
> assistance service (STAS).
>
> (b)   The model policy created pursuant to subsection
>       (a) shall:
>
>       (1)   Assist employers in recognizing and
>             responding to abusive conduct in the
>             workplace; and
>
>       (2)   Prevent retaliation against any employee who
>             has reported abusive conduct in the
>             workplace.
>
> (a)   Each employer may adopt the policy created
>       pursuant to subsection (a) as a policy to address
>       abusive conduct in the workplace.

Tenn. Code. Ann. § 50-1-503. While § 50-1-503 does not address

specifically whether the Tennessee general assembly intended to

create or confer a private right of action[5] for its violation, a

separate section of the Tennessee Code Annotated addresses the

creation of private rights of action in Tennessee legislation.

---

[5]     Cleaborn seems to believe that a "private right of action"
refers to the distinction between whether an entity being sued is
a private corporation or a public entity. (Resp. to Mot. to
Dismiss 6, ECF No. 22.) In her response to the defendants'
motion to dismiss, Cleaborn argues that the Board "is not a
private company" and that the Act "is designed for a public and a
private company." Contrary to Cleaborn's interpretation, a
"private right of action" is a term of art describing when a law
creates rights allowing private parties – such as Cleaborn – to
bring a lawsuit.

Tenn. Code Ann. § 1-3-119(a) provides that "for legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right.  In the absence of such express language, "no court of this state, licensing board, or administrative agency shall construe or interpret a statute to impliedly create or confer a private right of action except as otherwise provided in this section."  Tenn. Code Ann. § 1-3-119(b).

Nothing in the Tennessee Healthy Workplace act expressly or implicitly creates or confers a private cause of action; thus, Cleaborn cannot make a claim against the defendants pursuant to its provisions.  *See* Tenn. Op. Atty. Gen. No. 15-01, 2015 WL 224845, at *3 (2015)("No provision of the Healthy Workplace Act expressly creates or confers (or even indirectly refers to) a new private cause of action for abusive conduct.  Accordingly, the Act creates no new cause of action for abusive conduct against either state or local employers or state or local employees.").

Because the Tennessee Healthy Workplace Act does not create or confer a private cause of action, Cleaborn fails to state a claim upon which relief may be granted.  Therefore, it is recommended that Cleaborn's claims for violation of the Tennessee Healthy Workplace Act be dismissed.

1. *State Tort Claims*

Cleaborn asserts that the Board is liable to her for gross negligence based on negligent hiring and due to the acts of its "unfit agents". (Am. Compl. 8, ECF No. 12). She claims that "[t]he actions of unfit agents for [the Board] 'rise to the claim' of deprivation of rights;" thus, making the Board liable for gross negligence. (*Id.* at 20.) The defendants argue that the Tennessee Governmental Tort Liability Act ("GTLA") should be enforced, shielding the Board from liability because there is no proof of negligence such as to justify a waiver of immunity. (Mot. to Dismiss 15, ECF No. 14.) In response, Cleaborn argues that the GTLA should not apply to grant immunity because the Board "is not a municipality." (Resp. to Mot. to Dismiss 16, ECF No. 22.)

The GTLA grants governmental entities absolute immunity for any injury "which may result from activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-205. Municipalities cannot be held liable for exercising – or failing to exercise – discretionary functions. Tenn. Code Ann. § 29-20-205(1). A "governmental entity" under the GTLA means "any political subdivision of the state of Tennessee, including . . . [a] school district . . . ." Tenn. Code Ann. § 29-20-102(3)(A). Thus, the

34

Board is considered a governmental entity immune from suit in this instance.

Under the GTLA, governmental entities are generally immune from suit except when immunity is removed. Tenn. Code Ann. § 29-20-201. Immunity has been removed for civil claims sounding in negligence. Tenn. Code Ann. § 29-20-205. However, it does not remove immunity where the injury arises out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." Tenn. Code Ann. § 29-20-205(2). The GTLA's "civil rights" exception has been construed to include claims arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. *See Hale v. Randolph*, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004)

Accordingly, governmental entities in Tennessee are immune from liability for state-law claims asserting civil rights violations, even if those claims sound in negligence. Courts within the Sixth Circuit have consistently held that a party cannot circumvent a governmental entity's immunity by couching civil rights claims in the guise of negligence. *See, e.g.*, *Doe by and through Doe v. Jackson Madison County Bd. of Educ.*, 2018 WL 2927777, at *4 (W.D. Tenn. June 7, 2018)(citing *Campbell v. Anderson County*, 695 F. Supp. 2d 764, 778 (E.D. Tenn.

2010)("These torts are alleged to have been committed solely in the context of the violation of [plaintiff's] civil rights – this is in essence a civil rights suit.")); *Hale v. Randolph*, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004)("These torts are alleged to have been committed solely in the context of Hale being arrested by the police and the violation of Hale's civil rights . . . .  We cannot lose sight of the fundamental fact that this is in essence a civil rights suit.").

Cleaborn's claims against the Board as an employer are, in essence, claims for violation of Cleaborn's civil rights, not claims sounding in tort law.[6]  The "gross negligence" alleged by Cleaborn arises out of the same circumstances giving rise to her civil rights claim under § 1983 and § 1985(3).  It therefore falls within the "civil rights exception" listed in Tenn. Code Ann. § 29-20-205, and the Board retains its immunity.  *See Partee*

---

[6]    As referred to here, the "claims" only include those state tort claims specifically spelled out in Cleaborn's amended complaint.  In the amended complaint, Cleaborn pleads only "gross negligence" for the acts of unfit agents against the Board.  (Am. Compl. 20, ECF No. 12.)  Later, in her response to the defendants' motion to dismiss, Cleaborn claims that the attachments to said amended complaint "proved . . . Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress."  (Resp. to Mot. to Dismiss 3, ECF No. 22.) Cleaborn, however, failed to plead intentional infliction of emotional distress and negligent infliction of emotional distress in her amended complaint and, thus, cannot assert these claims through her motion pleadings. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014)("Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint.").

*v. City of Memphis*, 449 Fed. App'x 444, 448 (6th Cir. 2011)("A negligence claim falls within this exception [when] 'the same circumstances giv[e] rise' to both the negligence and civil rights claims.   Stated another way, the [T]GTLA 'preserves immunity for suits claiming negligent injuries arising from civil rights violations.'"(citations omitted)).

Cleaborn also claims that the Board should be liable for negligent hiring of such unfit agents.  (Resp. to Mot. to Dismiss 4, ECF No. 22.)   Tennessee recognizes a cause of action for negligent hig, supervision, and retention where an "employee establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness for the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008; *see also Brown v. Mapco Exp., Inc.*, 393 S.W.3d 696, 703 (Tenn. Ct. App. 2012); *Hays v. Patton-Tully Transp. Co.*, 844 F. Supp. 1221, 1222 (W.D. Tenn. 1993)("A plaintiff may recover for harm caused by the intentional act of the defendant's employee, committed outside the scope of the employee's employment, under a theory of negligent supervision.").  Elements of a negligence claim include a duty of care owed to the plaintiff, breach of that duty by the defendant, injury or loss, actual causation, and proximate causation." *Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 52 (Tenn. 2004).

There are no allegations, factual or otherwise, of the

elements of a negligence hiring claim in Cleaborn's amended complaint; the exhibits attached by Cleaborn do not support her conclusory allegation of negligent hiring; the court has already determined that the individual defendants' acts were not outside of the scope of employment; and there are no allegations that the Board knew of the employees' unfitness.    Thus, Cleaborn's conclusory claim of negligent hiring does not state a claim upon which relief may be granted, such that immunity under the GTLA would be removed from the Board.

In conclusion, Cleaborn fails to state a claim under Tennessee law for negligent hiring.    Additionally, Cleaborn's claims are more properly considered civil rights claims, rather than claims for gross negligence, making the GTLA applicable to this case.    Therefore, the Board is immune from suit for gross negligence under these circumstances.    Accordingly, it is recommended that Cleaborn's state tort claims for "gross negligence" be dismissed for failure to state a claim upon which relief may be granted.

I.    CONCLUSION

Even in taking Cleaborn's pleaded facts in a light most favorable to her, she has failed to state a claim upon which relief could be granted as to her claims under the Tennessee Healthy Workplace Act, RICO, §§ 241 and 242, § 1983, § 1985(3), and state tort laws. Therefore, for the foregoing reasons, it is recommended that the defendants' partial motion to dismiss the complaint be granted with respect to Cleaborn's claims under the Tennessee Healthy Workplace Act, T.C.A. § 50-1-501, *et seq.*; 18 U.S.C. § 241; 18 U.S.C. § 242; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1513(e); 42 U.S.C. § 1983; and 42 U.S.C. § 1985(3). In addition, it is recommended that the defendants' partial motion to dismiss be granted as to Cleaborn's state tort claims.

Respectfully submitted this 2nd day of January, 2019.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.